**In re Bertha M. COOPER a/k/a Bert Cooper, Debtor.**

**Edward DeV. BUNN, Jr., et al, Plaintiffs,**

v.

**Bertha M. COOPER, Defendant.**

**Bankruptcy No. 81-10926.
Adv. No. 81-0415.**

United States Bankruptcy Court, D. Maryland.

Feb. 18, 1982.

Richard M. McGill, Upper Marlboro, Md., for Bertha M. Cooper, debtor and defendant.

Edward DeV. Bunn, Jr., et al., Baileys Crossroads, Va., pro se, plaintiffs.

**OPINION AND ORDER DECLARING DEBT NON–DISCHARGEABLE**

PAUL MANNES, Bankruptcy Judge.

This matter came on for hearing on the Complaint for Recovery of Debt Due filed

by Edward DeV. Bunn, Jr., et al. Plaintiffs are minors, represented by Edward DeV. Bunn, next friend, pursuant to Rule 17(c) of the Federal Rules of Civil Procedure. The questions presented by the Complaint are whether the judgment for conversion in favor of the Plaintiffs and against the Debtor, Bertha M. Cooper, (Case entitled *General Services, Inc. v. Bert Cooper*, C.A. No. 80–1258–A [May 12, 1981], for Sheri K. Bunn, $3,700.00; for Edward DeV. Bunn, Jr., $5,000.00; and for all three, $2,500.00) is non-dischargeable under 11 U.S.C. § 523 and whether the Debtor's discharge should be denied under 11 U.S.C. § 727.

The undisputed facts of this case are that on May 12, 1981, Judge Albert Bryan, Jr., ruled in favor of the Plaintiffs in an action based on a theory of conversion, brought in the United States District Court for the Eastern District of Virginia. He awarded judgments of a total of Eleven Thousand Two Hundred Dollars ($11,200.00) to the three children for damages sustained because of the wrongful conversion of their horses by Bertha Cooper, the Debtor in this case. On July 21, 1981, Bertha Cooper filed her petition under Chapter 7 of the Bankruptcy Code, listing only the following debts upon her schedules:

| | |
|---|---|
| Bobby Bunn | $2,500.00 |
| Edward DeV. Bunn, Jr. | 5,000.00 |
| Sheri Bunn | 3,700.00 |
| Robert C. Dunn | 2,000.00 |

The court is advised that Robert C. Dunn, Esquire, was Ms. Cooper's counsel in the Virginia action.

The decision by Judge Bryan is decisive as to the issue of whether a conversion occurred, leaving only the question of whether the judgment based on conversion constitutes an exception to discharge because it is a "willful and malicious injury by the debtor to another entity or to the property of another entity," as defined by 11 U.S.C. § 523(a)6.

Judge Bryan awarded compensatory damages but not punitive damages, stating, in his findings of fact, that he finds no malice, although "it is close." *General*

*Services, Inc. v. Bert Cooper*, C.A. No. 80–1258–A (May 12, 1981). This court is free to make its own determination as to whether the Debtor's actions constitute the "willful and malicious" behavior required for a court to declare a debt non-dischargeable. *See Carey Lumber Co. v. Bell*, 615 F.2d 370, 377 (5th Cir., 1980); *Matter of Kasler*, 611 F.2d 308, 309–10 (9th Cir., 1979), *citing, Brown v. Felsen*, 439 U.S. 925, 99 S.Ct. 307, 58 L.Ed.2d 317 (1979) (construing Bankruptcy Act). Even bankruptcy courts that have recognized some collateral estoppel effect of prior judgments in other courts require that the issue in both court proceedings be identical.

In this case, no party made a showing that the standard for awarding punitive damages in tort in Virginia bears any relation to the standard for dischargeability determination, which is exclusively a matter of federal law. *See Spilman v. Harley*, 656 F.2d 224, 229 (6th Cir., 1981) (lack of showing that Ohio traffic code and 11 U.S.C. § 523 impose similar standards).

The standard for awarding punitive damages in Virginia is unclear. Actual malice will support such an award. *See, e.g., F.B.C. Stores v. Duncan*, 214 Va. 246, 198 S.E.2d 595 (1973); *Giant of Virginia v. Pigg*, 207 Va. 679, 152 S.E.2d 271 (1967). If there is no actual malice, courts have awarded punitive damages for other kinds of behavior that is equivalent to actual malice. The Fourth Circuit referred to conduct that is "in conscious disregard of the rights of others and is wanton and oppressive." *National Carloading Corp. v. Astro Van Lines, Inc.*, 593 F.2d 559, 565 (4th Cir.) reh. den. (1979). In *Peacock Buick, Inc. v. Durkin*, 277 S.E.2d 225 (1981), the court said that the behavior must demonstrate "ill-will," "malevolence," "spite," or "wicked intent." *Id.* at 227. The court in *Matney v. First Protection Life Ins. Co.*, 73 F.R.D. 696 (W.D.Va.1977) referred to "wanton" and "oppressive" behavior amounting to "criminal indifference." *Id.* at 697. The varying language applied in these cases makes it impossible for this court to determine whether the standards applied by Judge

Bryan in his decision not to award punitive damages are identical to that applied by a bankruptcy court in determining whether a debt constitutes an exception to discharge under 11 U.S.C. § 523(a)6. Because these issues may not be identical, application of collateral estoppel by this court would be improper. *See similarly In re E. Supple, Jr.*, 8 B.C.D. 544 (Bkrtcy. CT. 1981) (holding that because identity of issues in willful conversion suit and non-dischargeability action was not shown, collateral estoppel does not apply).

The court finds that this debt constitutes an exception to discharge pursuant to 11 U.S.C. § 523(a)6 because the act that formed the basis of the judgment rendered by Judge Bryan was "willful and malicious". The conversion itself was an injury to property for which Judge Bryan awarded damages in the total amount of Eleven Thousand Two Hundred Dollars ($11,200.00). The question that then arises is whether it was "willful and malicious" under the meaning of § 523.

The facts of this case fall within the ambit of the phrase "willful and malicious." In *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1903), the Supreme Court considered language in the Bankruptcy Act of 1898 that is identical to the "willful and malicious" standard present in 11 U.S.C. § 523(a)6. In *Tinker*, the Court held that in order to declare a debt non-dischargeable, the trial court need not find personal malice towards an individual. If the court finds that the action is intentional and deliberate, that finding is sufficient to support a conclusion that malice exists. *Tinker v. Colwell*, 193 U.S. at 485, 24 S.Ct. at 508. Collier on Bankruptcy states:

[1] *Meaning of Willful and Malicious Injury.*

In order to fall within the exception of section 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or

ill-will. The word "willful" means "deliberate or intentional", a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury. It has been said that this category of liabilities excepted from discharge "contemplates something more restricted than malice in the broader sense," and covers all cases in which the facts of intent and malice are judicially ascertained, irrespective of the character of the allegations made by the parties. Injuries within the meaning of the exception are not confined to physical damage or destruction; but an injury to intangible personal or property rights is sufficient. Thus the conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception. On the other hand; a technical conversion may very well lack any element of willfulness or maliciousness necessary to except the liability from discharge.

523.16[1] at 523–115–117 (citations omitted).

In the instant case, the facts demonstrate that the Debtor knew the victims of her tort, personally for many years, knew they were children, and knew the devastating effect her actions would have on the particular individuals involved. Her stealthy taking of the horses during the night also demonstrates her awareness of the wrongfulness of her actions as does her conduct following the conversion. The facts of this case satisfy even the strict standard of personal malice rejected by the Supreme Court in *Tinker* and, therefore, certainly meet the standard of intentional and voluntary action set forth in *Tinker*.

Courts construing bankruptcy legislation subsequent to the decision in *Tinker v. Colwell* have applied a similarly broad interpretation of the words "willful and malicious." In *In re Goeddaeus*, 1 C.B.C. 105 (Bkrtcy.W.D.Mi.1974) (construing the Bank-

ruptcy Act) and *In re Auvenshine*, 9 B.R. 772, 7 B.C.D. 511 (Bkrtcy.W.D.Mi.1981) (construing the Bankruptcy Code), bankruptcy courts held that damages resulting from the sale of goods subject to a security interest without satisfying that interest, constituted an exception to discharge under 11 U.S.C. § 523(a)6. In this case, Judge Bryan found that the Debtor sold the horses when

"the circumstances of which she was well aware put her on notice that she had no right to dispose of those horses."

*General Services, Inc. v. Bert Cooper*, C.A. No. 80–1258–A (May 12, 1981).

The phone calls from the children and their father alerted the Debtor to the fact that they claimed these horses. If a sale without regard to a security interest constitutes an exception to discharge, then certainly the sale of the horses in this case with actual notice of the children's assertion of ownership must also be non-dischargeable.

In *In re Freidenberg*, 12 B.R. 901, 8 B.C.D. 69 (Bkrtcy.S.D.N.Y.1981) the court declared a debt non-dischargeable even though the action upon which it was based sounded in contract, not in tort. The standard articulated in that case was if

anyone of reasonable intelligence knows that the act is contrary to commonly accepted and ordinary relationships among people, and injurious to another.

*Id.* at 905, 8 B.C.D. at 71–72.

In this case, the Debtor knew that the children owned these horses and that their mother did not, and, finally, knew the devastating impact that the loss of these horses would have on the Bunns. She knew the inadequacy of the price paid by her for the horses. Her actions in unilaterally removing and selling stealthily the horses certainly violates the ordinary, accepted relationships between people.

The method of conversion and the testimony of the Bunns distinguish this case from *Grand Piano and Furniture Co. v. Hodges*, 4 B.R. 513 (Bkrtcy.W.D.Va.1980) in

which the court found a debt dischargeable because the debtor's testimony that he intended no harm to the secured creditor was uncontradicted. *Id.* at 517. In this case all facts and circumstance demonstrate that the taking was malicious as well as willful. This court, then, finds that the debt of Eleven Thousand Two Hundred Dollars ($11,200.00) based on a judgment for damages stemming from conversion constitutes an exception to discharge under 11 U.S.C. § 523(a)6.

The Plaintiffs failed to carry their burden of proving that the Debtor's discharge should be denied under 11 U.S.C. § 727. Although the evidence showed certain variances between the Debtor's testimony during the tort proceedings in the United States District Court for the Eastern District of Virginia and in the proceedings before this court, Plaintiffs presented no evidence to show that the Debtor made a false oath in connection with this proceeding, as 11 U.S.C. § 727(a)(4)(A) requires. Because the Plaintiffs failed to subpoena any of the books and records of the Debtor, her failure to produce such documentary evidence was justified, does not demonstrate that she did not keep books and records, and does not constitute grounds for denying discharge under 11 U.S.C. § 727(a)(3). None of the testimony offered demonstrated concealment or waste of assets, or any other behavior that constitutes grounds for denying the Debtor's discharge under 11 U.S.C. § 727.

It is, therefore, this 18th day of February, 1982, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, That the debts of $2,500.00 owed to Bobby Bunn; $5,000.00 owed to Edward DeV. Bunn, Jr.; and $3,700.00 owed to Sheri Bunn[1] be, and hereby are, declared non-dischargeable, and it is further

ORDERED, That the discharge of the Debtor with regard to all other debts shall proceed.

---

1. *General Services, Inc. v. Bert Cooper*, C.A. No. 80–1258–A, May 12, 1981; judgment in favor of Sheri, $3700; in favor of Eddie, $5000; and in favor of all three, the amount of $2500, against the Defendant Bert Cooper.