**In re Terry Vester AUVENSHINE and Ann M. Auvenshine, Debtors.**

**CREDITHRIFT OF AMERICA, Plaintiff,**

v.

**Terry Vester AUVENSHINE and Ann M. Auvenshine, Defendants.**

No. NL 79–01985.

Adv. No. 80–0064.

United States Bankruptcy Court,
W. D. Michigan.

March 10, 1981.

Delmer R. Smith, Lansing, Mich., for plaintiff.

Farhat, Burns & Story, P. C., Charles E. Henderson, Lansing, Mich., for defendants.

## OPINION

### DISCHARGEABILITY—CONVERSION— EXEMPTIONS

DAVID E. NIMS, Jr., Bankruptcy Judge.

Credithrift of America filed its complaint for a determination that its claim against debtors is nondischargeable to the extent of $450.00.

No proofs were taken, the parties agreeing to submit this matter on an agreed statement of fact. This statement is as follows:

1. On September 8, 1978, a chattel mortgage (security agreement) was executed by the defendants conveying to the plaintiff a security interest in certain described mortgage property which included one '75 Whirlpool washer and one '75 Hot Point dryer to secure a total indebtedness of $2,046.24.

2. This security interest was a non-purchase money security interest, and possession was left with the defendants' and at no time was possession taken of the two items in question by the plaintiff.

3. On November 1, 1979, defendants filed their voluntary petition under Chapter VII of the Bankruptcy Code; and an order for relief was granted on that date by law.

4. At some time within one year prior to November 1, 1979, the debtors sold the washer and dryer for the sum of $250.00 in order to raise the money for the purchase of an automobile which cost $450.00.

The parties agreed that the sole issue in this case is whether or not the indebtedness of the defendants to the plaintiff in the sum of $250.00 is dischargeable under the provisions of Title 11 of the United States Code, Section 523(a)(6) which provides that the discharge does not discharge an individual debtor for any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

It is the claim of the defendants that inasmuch as they would have been entitled to a discharge of the lien under the provisions of Section 522(f) that there have been no damages suffered for which the plaintiff can recover.

The records indicate that a complaint to invalidate the Credithrift lien was filed prior to the filing of the complaint in this proceeding and a default judgment granting such relief was entered April 23, 1980.

Basically, there are two issues raised in this case. The first concerns the relationship between a debt arising from a "conversion" of collateral by the debtor, and the setting aside of a lien under 11 U.S.C. Section 522(f)(2)(A) after the petition is filed. The second issue involves construction of the phrase "willful and malicious injury" contained in 11 U.S.C. Section 523(a)(6), which reads:

"(a) A discharge under Section 727 . . . . of this Title does not discharge an individual debtor from any debt—

\*　\*　\*　\*　\*　\*

(6) For willful and malicious injury by the debtor to another entity or to the property of another entity . . ."

I. Debtors first claim that the avoidance of Credithrift's lien under 11 U.S.C. Section 522(f)(2)(A) had the effect of erasing any cause of action Credithrift might have had for an earlier conversion of collateral. Debtors argue that the lien avoidance "relates back" to the time the security interest was taken; at that time, debtors still had the washer and dryer.

11 U.S.C. Section 522(f)(2) provides:

"\* \* \* the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien on an interest of the debtor in property <u>to</u> <u>the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section</u>, if such lien is—

\*　\*　\*　\*　\*　\*

"(2) a nonpossessory, nonpurchase-money security interest in any—
(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;"
(All underlines by the Court)

11 U.S.C. Section 522(b) restricts exemptions to "property of the estate." Property of the estate under 11 U.S.C. Section 541(a)(1) includes ". . . all legal or equitable interest of the debtor in property *as of the commencement of the case.*" A voluntary case is commenced when the petition is filed. 11 U.S.C. Section 301. As of the "commencement of the case" the washer and dryer had been sold. Therefore, I cannot find that the debtor held any legal or equitable interest in the washer and dryer as of the commencement of the case. As the debtors could only exercise the right to exemption from "property of the estate", they could not have an exemption in the washer and dryer. Therefore, the debtors had no right to avoid the lien on the washer and dryer under Section 522(f)(2)(A).

In their brief, debtors assert that the word "held" in Section 522(f)(2)(A) refers to possession at the time the security was given. But, that provision says "are held" which is present tense; and the subsection is tied to exemptions which can only come from property of the estate, which in turn is determined when the petition is filed.

Debtors also argue that Credithrift has suffered no damages, because, if the debtors had not sold the washer and dryer, Credithrift's lien would have been set aside after the petition was filed anyway. Much of the prior discussion about Section 522(f)(2) is relevant to this argument as well; the lien was not in fact set aside as to the washer and dryer. Furthermore, the damages accrued at the time of the conversion. "Ordinarily, the time of the conversion is the time considered in determining the value of the property in an action for the conversion." 18 Am.Jur.2d, *Conversion* Section 86 (1965). The only evidence as to such value is the actual consideration received by the debtors for the washer and dryer, $250.00.

The argument of the debtors that the secured party could recover the washer and dryer from the purchaser is not persuasive either. There has been no indication whether Credithrift perfected its security interest as to the washer and dryer. The secured party was not obligated to file a financing statement to maintain its rights against the debtors. There has been no indication that the purchaser is still available, still has the collateral in his possession, or that action against him would cost less than the value of the collateral.

II. So far, we have seen that the presence of the Section 522(f)(2) lien avoidance would not affect the secured creditor's right to have a pre-petition debt for conversion of collateral declared non-dischargeable. Now we must determine whether the debt *is* non-dischargeable as being "... for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. Section 523(a)(6).

Section 17(a) of the 1898 Act provided that a "discharge in bankruptcy shall release a bankrupt from all of his provable debts ... except such as ... (2) are ... for willful and malicious conversion of the property of another; ... (8) are liabilities for willful and malicious injuries to the person or property of another other than conversion as excepted under clause (2) of this subdivision."

Prior to the amendment of 1970, Pub.L. 91–467, Sec. 6, Sec. 17 read in part:

"a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, ... except such as ... (2) are liabilities ... for willful and malicious injuries to person or property of another ..."

The original Act of 1898 read:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as ... (2) are ... for willful and malicious injuries to the person or property of another ..."

Thus, the Code has reverted back to the original provisions as to "willful and malicious injuries."

In *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) the court held a claim for damages for criminal conversion with the claimant's wife to be non-dischargeable. The court stated at p. 485, 24 S.Ct. at p. 508:

"'In order to come within that meaning as a judgment for a wilful and malicious injury to person or property, it is not necessary that the cause of action be based upon special malice, so that without it the action could not be maintained.'"

Again the court states:

"'A wilful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously, so as to come within the exception. It is urged that the malice referred to in the exception is malice towards the individual personally, such as is meant, for instance, in a statute for maliciously injuring or destroying property, or for malicious mischief, where mere intentional injury without special malice towards the individual has been held by some courts not to be sufficient. *Com. v. Williams*, 110 Mass. 401. We are not inclined to place such a narrow construction upon the language of the exception. We do not think the language used was intended to limit the exception in any such way. It was an honest debtor, and not a malicious wrongdoer, that was to be discharged.'"

In *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916) the court had before it a conversion case. In holding the debt non-dischargeable the court stated:

"To deprive another of his property forever by deliberately disposing of it without semblance of authority is certainly an injury thereto within common acceptation of the words. Bouvier's Law Dict., 'Injury.' And this we understand is not controverted; but the argument is that an examination of our several Bankruptcy Acts and consideration of purpose and history of the 1903 amendment will show Congress never intended the words

in question to include conversion. We can find no sufficient reason for such a narrow construction."

The sale of property subject to a security interest by a debtor without payment of the debt so secured is a willful and malicious conversion. *In re Goeddaeus,* 1 C.B.C. 105 (W.D.Mich.1974).

Debtors argue that the standard for "willful and malicious" has been made more rigid than it was under the old Act. Debtors rely on language in the House and Senate reports:

"... To the extent that *Tinker v. Colwell* ... held that a less strict standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled." Senate Rep.No. 95–989, 95th Cong., 2d Sess. (1978) 77–70, U.S.Code Cong. & Admin.News 1978, 5787, 5865; see also House Report No. 95–595, 95th Cong., 1st Sess. (1977), 363, U.S.Code Cong. & Admin.News 1978, 5787.

However, the language used by Congress in the Statute is almost identical to that before the Court in *Tinker v. Colwell, supra,* and *McIntyre v. Kavanaugh, supra.*

73 Am.Jur.2d *Statutes,* Section 151 (1974) states:

"The meaning of the statute is not conclusively established by legislative history. Moreover, the legislative history of a statute may not compel a construction at variance with its plain words, and where the language of a statute is unambiguous, consideration of the history of the legislation is not permissible."

Legislative history is a helpful tool in determining the intent of the legislature where that intent is not clear. But, I fail to see how a statement in a report prepared for the assistance of Congress, usually by unidentified persons, can overrule decisions of the United States Supreme Court where almost the identical language was involved. In my opinion, *Tinker v. Colwell,* supra, is still operative and controlling.

The Court is aware of the decision in *In re Hodges,* 6 BCD 53, 4 B.R. 513, (Bkrtcy.W. D.Va., 1980), in which the court found that a debt due to conversion was dischargeable as it was not a "willful and malicious injury." For the reasons set forth above, I must respectfully differ with my learned colleague. In a later case, the sale of cattle subject to a security interest was held to be a willful and malicious injury to a property interest and, thus, not dischargeable. *In re McCloud,* 7 B.R. 819 (Bkrtcy.M.D.Tenn., 1980).

Therefore, I find that the debtors' debt to Credithrift in the sum of $250.00 is not dischargeable and a judgment in this amount may be entered with costs to be taxed.