In re Richard BOREN, Beverly Boren, Debtor.

MAMMOTH CAVE PRODUCTION CREDIT ASSOCIATION, Plaintiff,

v.

Richard BOREN, Defendant.

Bankruptcy No. 18300258.
Adv. No. 1830080.

United States Bankruptcy Court,
W.D. Kentucky.

July 12, 1985.

Charles A. Goodman, Glasgow, Ky., for plaintiff.

Philip Huddleston, Bowling Green, Ky., for defendant.

## MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

This matter comes before the court on the debtor's motion to clarify our order of March 14, 1985, 47 B.R. 293, in which we found that the debtor had converted certain collateral belonging to the Mammoth Cave Production Credit Association (MCPCA) and that his debt to that creditor was therefore nondischargeable. The question we determine today is the exact dollar value of the converted collateral and, resultingly, the amount of the nondischargeable debt. The facts surrounding this action were fully discussed in our earlier opinion and need not be repeated here in great detail.

In April of 1981, the debtor granted MCPCA a security interest in his 1981 crops in consideration for various farm loans. The security interest granted in the debtor's crops was part of a comprehensive "all-proceeds" loan arrangement between the debtor and MCPCA. The debtor sold his 1981 crop for $76,004.14[1] but only paid $18,417 of those proceeds to MCPCA. The remainder was used to pay a variety of other debts, including $46,415 to the Federal Land Bank, which held the first lien on the debtor's farm.[2] At the time the debtor and his wife filed bankruptcy, the balance remaining on the debt owed MCPCA was $153,153.37. This amount has not been reduced by an distributions from the bankruptcy estate to date.

---

1. MCPCA claims that the debtor received $76,-655.14 for his 1981 crops. We choose to accept the debtor's slightly smaller figure as the actual sum he received for his 1981 crop.

2. MCPCA held the second lien on the debtor's farm and home.

It is a settled matter of bankruptcy law that the amount of nondischargeable debt arising from an act of conversion is the lesser of the value of the converted property or the amount of the indebtedness.[3] In this case the attorney for the debtor has made a series of long and eloquent arguments concerning the amount of collateral actually converted. The major thrust of these arguments was that the amounts paid by the debtor to the Federal Land Bank should not be considered as having been converted by the debtor, since these payments "benefited" MCPCA as the second lienholder on the debtor's farm. Counsel for the debtor reasoned that payments made to first lienholders in property would also be beneficial to second lienholders of that property, since those payments would increase the "value" of the property available to satisfy the second lienholder's debt.

While in another case this "indirect benefit" argument may be an appropriate method of determining the amount of collateral converted by a debtor, in the present action the facts do not encourage such a liberal calculation of the nondischargeable debt. In our previous opinion we found that the debtor had actively concealed his conversion of MCPCA's collateral in order to obtain additional extensions of repayment time. This is not a case where the debtor acted in a good faith attempt to comply with the terms of his security agreement. He knew of his obligations under the MCPCA security agreement and willingly chose to violate them, diverting nearly $47,000 of MCPCA's collateral and later actively concealing that fact. Furthermore, no evidence has been presented in this action which indicates that the debtor's payments to the Federal Land Bank actually benefited MCPCA. We therefore hold that the amount of debt rendered nondischargeable by our prior opinion is $57,587.14, a sum which represents the difference between the amount the debtor received for his 1981 crop and the 1981 crop proceeds which he directly turned over to MCPCA.

An order reflecting these findings and clarifying our earlier opinion shall be entered by the court.

---

**3.** *In re Ricker,* 26 B.R. 862 (Bkrtcy.E.D.Tenn. 1983); *In re Stephens,* 26 B.R. 389 (Bkrtcy.W.D. Ky.1983); *In re Talcott,* 29 B.R. 874, 10 BCD 734 (Bkrtcy.D.Kan.1983); *In re Tanner,* 17 B.R. 201 (Bkrtcy.W.D.Ky.1982); *In re Auvenshine,* 9 B.R. 772, 7 BCD 511 (Bkrtcy.W.D.Mich.1981).