In re Carl R. GOODENOW, Debtor.

Bankruptcy No. 90–20002.

United States Bankruptcy Court,
D. Maine.

Aug. 2, 1993.

Francis M. Jackson, Portland, ME, for debtor.

Scott A. Robertson, Jensen, Baird, Gardner & Henry, Portland, ME, for GMAC.

### MEMORANDUM OF DECISION

JAMES A. GOODMAN, Chief Judge.

This matter comes to the Court on the Debtor's motion to redetermine the claim of General Motors Acceptance Corporation ("GMAC"), a creditor currently holding both a secured and unsecured claim against the estate. Credit disability insurance proceeds have become available to pay the claim and GMAC now seeks to recover the full amount of its unsecured claim rather than only a percentage dividend.

### FACTS

Carl Goodenow (the "Debtor") bought a Buick Riviera (the "Vehicle") in 1988 under a retail installment sale contract (the "Contract") with Giberson Buick–Pontiac, Inc., which assigned the Contract to GMAC, the current holder. Pursuant to the Contract, the Debtor granted the holder a security interest in the Vehicle, and obtained credit life and disability insurance under a policy (the "Policy") which named GMAC as creditor beneficiary and the Debtor's estate as second beneficiary.

On January 2, 1990, the Debtor filed a petition for relief under 11 U.S.C. Chapter 13. As of the date of filing, the Debtor owed $18,236.84 on the Contract. The amount of GMAC's secured claim was determined to be $12,325.00, the value of the Vehicle, and the balance of GMAC's claim was deemed unsecured. In January, 1991, the Debtor became totally disabled and, as a result, GMAC began receiving payments under the disability insurance. Since the commencement of this case, GMAC has been paid $13,294.24 from the disability insurance and $2,485.98 from the Chapter 13 Trustee as adequate protection.

GMAC became unsatisfied with the status of its unsecured claim under the proposed Chapter 13 plan. GMAC requested entitlement to the full amount of the claim, rather than a percentage dividend, due to the availability of the insurance payments. The Debtor then filed this motion to redetermine the amount of GMAC's claim. The

parties have agreed to allow the Court to resolve the matter on a joint stipulation of facts and legal memoranda.[1]

### DISCUSSION

■ A bankruptcy court has jurisdiction to determine parties' claims against a debtor's estate. 28 U.S.C. §§ 1334(a); 157(b)(2)(B). Upon confirmation of a debtor's Chapter 13 plan, creditors' claims are generally fixed and the parties are thereafter bound by the plan provisions. 11 U.S.C. § 1327(a). In this case, the Debtor's Chapter 13 plan was confirmed by court order dated June 28, 1993, although it was entered subject to the Court's ruling on this matter. Consequently, the status of GMAC's claim remains an open issue.

The pivotal issue is whether the insurance proceeds constitute property of the estate pursuant to 11 U.S.C. § 541. This Court agrees with GMAC that it is entitled to the full $18,236.84 of its claim on the basis that the proceeds are not estate property.[2] Resolution of this issue depends upon an analysis of the Debtor's interests in the Policy and proceeds before bankruptcy, because an " 'estate's legal and equitable interests in property rise no higher than those of the debtor.' " *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir.1987), *quoting, In re Gagnon*, 26 B.R. 926, 928 (Bankr.M.D.Pa.1983).

■ As a preliminary matter, a distinction must be made between the Policy itself and the proceeds payable thereunder, as ownership of one does not necessarily entail ownership of the other. "Several different parties may have a property interest in such a policy or its proceeds, including the owner, the insured and the beneficiary, all of whom may be different persons." *First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3rd Cir.1993).

In this case, the Policy and any rights thereunder were owned by the Debtor and became part of the bankruptcy estate. *MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89 (2d Cir.1988), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988); *In Re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir.1987). The Debtor's ownership of the Policy invested him with rights which could potentially *affect* the proceeds; however, the Debtor does not have the type of legal or equitable ownership interest necessary under § 541(a) to make the proceeds estate property. As explained by the Fifth Circuit in a case involving liability insurance:

> Insurance policies are property of the estate because, regardless of who the insured is, the debtor retains certain contract rights under the policy itself. Any rights the debtor has against the insurer, whether contractual or otherwise, become property of the estate.... [However,] '[t]he question is not who owns the policies, but who owns the liability proceeds.' ... The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid the claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate.

*Matter of Edgeworth*, 993 F.2d 51, 55–56, (5th Cir.1993), *quoting Louisiana World Exposition*, 832 F.2d at 1399. *See also, First Fidelity Bank v. Mcateer*, 985 F.2d 114 (3rd Cir.1993); *In Re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987); *In Re Encinas*, 27 B.R. 79 (Bankr. D.Ore.1983); *In Re Daisy Systems Securities Litigation*, 132 B.R. 752 (N.D.Cal.

---

1. The parties' joint stipulation included Exhibit A, an installment sale contract for a 1987 Ford F150, the wrong vehicle. The correct contract for the Buick Riviera was included in the Debtor's statement of facts filed on April 2, 1993, and the two contracts are identical in form.

2. GMAC has also argued that it is entitled to the entire amount of its claim because it is fully secured by virtue of a security interest in the credit disability insurance proceeds. However, this court's decision that the proceeds are not estate property makes GMAC's second argument moot.

1991); *In Re White*, 1990 WL 512962, 1990 Bankr. Lexis 1798 (Bankr.D.Idaho 1990).[3]

The Policy here, as in most cases of credit insurance, is a one premium contract in which the Debtor's remaining rights after purchase are to force the insurance company to pay under the terms of the policy and, in the rare circumstance of Debtor's prepayment of the loan, to recover as second beneficiary. However, the Policy contains no provisions allowing the Debtor to designate a different beneficiary other than GMAC. Upon proof that the Debtor was disabled, insurance proceeds were payable directly to GMAC as beneficiary. The Debtor has no right to receive and keep the proceeds, except in conditions not present here. It is clear that the Debtor could exert no control over the proceeds before bankruptcy and consequently had no ownership interest therein. Therefore, despite the estate's interest in the Insurance Policy, the proceeds do not constitute property of the Debtor's Chapter 13 estate.

Because the insurance proceeds are not estate property, the payments GMAC has received on its claim have reduced the amount of GMAC's claim in the bankruptcy estate. Therefore, GMAC's claim is now in the amount of $5,911.84, consisting of the original claim less the amount of the insurance payments.

The parties have stipulated that the value of the vehicle in question is $12,325.00. Based on that valuation, the full amount of GMAC's claim is secured and thus the Debtor must amend its plan to provide for GMAC's claim accordingly.

The foregoing constitutes findings of fact and conclusions of law pursuant to F.R.Bky.P. 7052. An appropriate order shall enter.

### ORDER

Pursuant to a Memorandum of Decision of even date herewith, it is hereby

ORDERED that GMAC is determined to hold a claim in the amount of $5,911.84, which is fully secured by the vehicle held as collateral. The Debtor shall amend its plan to provide for GMAC's secured claim in a manner consistent with this opinion.

---

**3.** The Court is aware of a First Circuit Court of Appeals decision which held that liability insurance proceeds were property of the bankruptcy estate. *Tringali v. Hathaway Machinery Co., Inc.,* 796 F.2d 553 (1st Cir.1986). However, *Tringali* is distinguishable from the present case. In the case of liability insurance, there may be numerous potential creditors. Consequently, the court was concerned with starting a "race to the courthouse" by potential plaintiffs. As a result, the court found that the proceeds should be marshalled into the bankruptcy estate to be more equitably distributed. Those concerns are not present in this case, because GMAC is the only creditor with a claim to the insurance proceeds. In addition, the credit disability insurance in the instant case is inherently different from product liability insurance in that credit insurance from its inception involves three parties—the insurance company, the owner of the policy, and the creditor as third party beneficiary; whereas at the time a product liability policy is executed, it involves only the insurance company and the insured; the beneficiary remains unknown. This distinction is evident by the manner in which each type of insurance pays benefits. Under credit disability insurance, the insurer pays the creditor directly upon proof that the insured/debtor is disabled. However, under liability insurance, a claimant must file a claim against the insured. For the foregoing reasons, *Tringali* is not applicable to the present facts.